OPINION. Black, Judge: The question involved in this proceeding is to what extent, if any, the respondent, acting under section 45 of the Revenue Act of 1938 and the Internal Revenue Code, erred in refusing to allow to petitioner as a deduction from gross income a part of certain broadcasting costs incurred by petitioner’s sole stockholder, a Canadian corporation, for the calendar years 1938 and 1939 in the amounts of $55,063.26 and $50,426.36, respectively. Section 45 of the Revenue Act of 1938 (applicable to the year 1938) is the same as section 45 of the Internal Revenue Code (applicable to the year 1939) and is set forth in the margin.[1] The parent company owns and operates a radio station in Canada known as station CKLW. Petitioner’s sole business is to sell radio time over station CKLW to advertisers in Detroit and vicinity for its own account and collect for such services. Petitioner’s income depends to a large extent on the popularity of station CKLW with the listening public. The popularity of the station depends on the kind of programs that are broadcast. The parent company in order to operate station CKLW and make it an effective and popular station incurred during 1938 and 1939 certain broadcasting costs of $175,688.36 and $170,364.21, respectively. These costs were shared by petitioner and its parent corporation in proportion to the volume of sales by each corporation. Included in these broadcasting costs, the totals of which are given above, were the amounts of $55,063.26 and $50,426.36 paid by the parent company to Mutual Broadcasting System, Inc. during the years 1938 and 1939, respectively, “for sustaining programs and other broadcasting services.” The respondent determined that the business relationship between the parent company and petitioner was such that the greater part of the broadcasting costs incurred by the parent company should be distributed, apportioned, or allocated between the parent company and petitioner under section 45, swpra. He determined, however, that the above amounts of $55,063.26 and $50,426.36, here in controversy should first be excluded from the total broadcasting costs of $175,688.36 and $170,364.21, respectively, before making the apportionment. As set out in detail in our findings, the respondent also made similar adjustments relative to depreciation and amortization of broadcasting rights which the parent company had included in its broadcasting costs, but these adjustments are not in controversy. The respondent in his determination also changed the apportionment fraction by deducting the above amounts of $55,063.26 and $50,426.36 from the net sales of the parent company for the years 1938 and 1939, respectively.. The explanation given by the respondent in his deficiency notice for all of these adjustments is that: It has been determined that the method used in apportioning broadcasting costs between * * * [petitioner and the parent company] does not clearly reflect your income for Federal income tax and excess-profits tax purposes. ***»»»* See sections 41 and 45, Revenue Act of 1038, and Article 45-1 of income tax Regulations 101. The parts of article 45-1 of Regulations 101 pertinent to this proceeding are printed in the margin.[2] Where the Commissioner has acted under section 45 in making his determination, the taxpayer has the burden of showing that such determination was purely arbitrary and not made under any of the situations prescribed by the statute as a proper foundation for allocation of the expenses in question. Glenmore Distilleries Co., 47 B. T. A. 213, and cases there cited. We think the petitioner has met its burden of proof in the instant case. The amounts in controversy of $55,063.26 and $50,426.36 which the parent company paid to Mutual Broadcasting Gystem, Inc. “for sustaining programs and other broadcasting services” were in our opinion just as necessary to make station CKLW a popular and effective radio station as any of the other items making up the amounts of $111,625.44 and $121,024.50 included in the totals of $175,688.36 and $170,364.21, respectively, of broadcasting costs. It was alleged in the petition and admitted in the amended answer that: The revenue of the taxpayer corporation is derived by the sale to advertisers of station time for the purpose of broadcasting music, news and entertainment sponsored by such advertisers. The taxpayer corporation derives revenue from advertisers only during a limited number of hours each day. Such programs are known as commercial programs. It is essential in the broadcasting business that the station broadcast continuously in order to build up and retain its listener audience. During the hours that are not sold as commercial programs the taxpayer corporation must provide programs from which no revenue is derived. Such programs are known as sustaining programs. The item of broadcasting costs of Mutual which has been disallowed by the Commissioner is the proportion of the actual cost incurred and paid to Mutual for sustaining programs and other broadcasting services. We hold that the respondent erred in excluding the amounts of $55,063.26 and $50,426.36 from the broadcasting costs of $175,688.36 and $170,364.21, before making the distribution, apportionment, or allocation. We hold further that the respondent also erred in arriving at the apportionment fraction for both years by reducing the net sales of the parent company by the amounts of $55,063.26 and $50,426.36, respectively. These amounts represented expenses paid by the parent company for which it was reimbursed in part by petitioner and had no effect on the net sales of the parent corporation. Cf. Glenmore Distilleries Co., supra. Any amount apportioned to the petitioner would increase the net profit of the parent company and vice versa, but would not affect its net sales. The result of our sustaining petitioner in its assignment of error is that there will be no deficiency for either of the taxable years. There were some other adjustments made by the Commissioner in his determination of the deficiencies which were not contested, but giving effect to these adjustments does not result in any deficiency for either taxable year after giving effect to our sustaining petitioner’s assignments of error. Petitioner has not alleged nor proved any overpayment for either taxable year. Decision will be entered for petitioner that there are no deficiencies. SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the Income of any of such organizations, trades, or businesses. Art. 45-1. Determination of the taxable net income of a controlled, taxpayer. — * • * ****••• (b) Scope and purpose. — The purpose of section 45 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining, according to the standard of an uncontrolled taxpayer, the true net income from the property and business of a controlled taxpayer. The interests controlling a group of controlled taxpayers are assumed to have complete power to cause each controlled taxpayer so to conduct its affairs that its transactions and accounting records truly reflect the net income from the property and business of each of the controlled taxpayers. If, however, this nas not been done, and the taxable net incomes are thereby understated, the statute contemplates that the Commissioner shall intervene, and, by making such distributions, apportionments, or allocations as he may deem necessary of gross income or deductions, or of any item or element affecting net income, between or among the* controlled taxpayers constituting the group, shall determine the true net income of each controlled taxpayer. The standard to be applied in every case is that of an uncontrolled taxpayer dealing at arm’s length with another uncontrolled taxpayer. ******* (c) Application. — Transactions between one controlled taxpayer and another will be subjected to special scrutiny to ascertain whether the common control is being used to reduce, avoid or escape taxes. In determining the true net income of a controlled taxpayer, the Commissioner is not restricted to the case of improper accounting, to the case of a fraudulent, colorable, or sham transaction, or to the case of a device designed to fcoduce or avoid tax by shifting or distorting income or deductions. The authority to determine true net income extends to any case in which either by inadvertence or design the taxable net income, in whole or in part, of a controlled taxpayer, is other than it would have been had the taxpayer in the conduct of his affairs been an uncontrolled taxj>ayer dealing at arm’s length with another uncontrolled taxpayer.